Case number 20-1406, Winglet Technology, LLC, petitioner versus Federal Aviation Administration. Mr. Schulte for the petitioner, Ms. Neumeister for the respondent. Good morning, counsel. Good morning, Your Honor. Mr. Schulte, when you're ready, please proceed. Thank you, Your Honor. Again, my name is Robert Schulte. I'm counsel for Winglet Technologies, LLC, the petitioner's matter. Let me begin by saying what the petitioner is not seeking here, Your Honors. Petitioner is not asking this court to run the FAA. Petitioner is not asking the court to interfere with the FAA's congressional mandate to determine how best to allocate its resources to carry out that mandate. We're not asking anything of the sort. We fully concede that the FAA has enormous discretion in the matter in which it carries out its important function of ensuring air efficiency and air safety. But what we are asking for in this case is for the court to rescind the June 25, 2020 memorandum, which is placed in the STC file in this particular application process and to remand the entire application process back to the Wichita Aircraft Certification Office, or ACO. Now, I realize, of course, the court is probably thinking to itself, haven't you just contradicted yourself? And the answer is no, and here's why. The entire basis for sending this application process out to New York Aircraft Certification Office was a fiction. It was a fabrication, and that's the polite way of putting it. When an agency takes an action, as it has here, based on a fabrication, especially a fabrication of this type, and we'll come to that in a moment, then that action should find no refuge in this court. That action should find no refuge under the so-called discretionary function of the agency's defenses. The fact of the matter is, the Federal Aviation Administration, in this case, took this application process, the supplemental type certification process, and sent it to a foreign office 1,500 miles away based on something that was patently untrue. What was untrue? The fact that my client, Winglot Technologies LLC, and Mr. Kaiser in particular, was a, quote, threat to FAA employees, end quote, a threat to air safety. Now, why are we so honed in on that? Mr. Shultz. I'm sorry, I didn't realize you would be so long-dwelling on the facts of the case with which we're familiar. Okay. I really think the starting point here needs to be your standing. Where is the injury that has been experienced or is imminent, any cognizable injury that is? Of course, Your Honor, and thank you for that question. Your Honor is referring, of course, to Article III standing. Certainly, under the various case laws cited in the briefs, the company, Winglot Technologies, is the object of the FAA order. Winglot Technologies- Ron, he's dealing with the harm aspect here, the harm aspect of Article III standing. Sure. The injury in question, Your Honor, is the injury to the reputation of the company itself. Well, under the precedents, publication doesn't occur with an intra-governmental communication, so that can't constitute reputational harm. What else is that? That's not merely an intra-governmental communication, Your Honor. That is a memorandum that will be published in the STC file and that is very much accessible to the public, number one. But number two- That doesn't, it has not been published. It may be yet published, but your harm has not occurred, or that harm, I should say. But as far as the STC process, Your Honor, that will happen. And this Court certainly has the power to enjoin that from happening. But putting that aside, we also have the issue of the actual cost and expense involved in the removal of the STC application from the Wichita ACO out to New York ACCO. And the record is replete, and there's numerous emails in the briefs where Mr. Kaiser has documented and will articulate it, the harm that's going to ensue if, in fact, it is not returned to the Wichita ACO. And bear in mind, too- Do you have any case in which a change, an alteration on government procedures resulted in your standing, supported standing? Not that we have found, Your Honor. Right. And can I clarify something? You said you'd like this decision to transfer to the New York office to be invalidated by us and sent back to the Wichita office. Do you want it sent back to the same people in the Wichita office, or would it go to, because there were an awful lot of complaints about the people with which the company was dealing, or is the relief you seek that it be sent back to the Wichita office, but to different people, or that a structure specialist be brought in? We would prefer that it be sent back to the Wichita ACO and different individuals brought in. We do not dispute that there is bad blood between Mr. Kaiser and a number of people down there. I'm sorry, I just want to clarify your word here. You prefer, do you ask us to send it back to different people, or are we just, your only relief you seek from us is overturning of that order, which in your view would return it to the Wichita office? The rescinding of the order would have a couple of effects. Number one, it would delete from the file what we perceive to be rather harmful, libelous, slanderous statements that can't- How would it delete from the file? I don't understand. We don't erase agency files. You petitioned for review, just asked that the reconsideration order be overturned, not that we clean out files. The files will still be what they'll be, and much of it would be reproduced in an opinion. I may have been unlawful in my statement. Yes, we refer that the order be rescinded. Obviously, that would be in the file as such. That being said, yes, we'd like it sent back to the ACO, Wichita ACO, and indeed have different people assigned, which is eminently possible. Are you suggesting, I'm sorry, is it that you want us to say new people should be assigned, or all you ask from us is that the order be held invalid, and then you'll hope for different people? You don't want us to say that you should get new people. We want you to invalidate the order and have the application file sent back to the Wichita ACO. We certainly concede that the FAA has the discretion to decide who is going to be on that application. Right, and so if it were sent back, and the people in Wichita said, well, you've already spent more than a year in New York, and so for efficiency's sake, they don't repeat the same reason they did before. They just said for efficiency's sake, and because New York has a structure specialist which you've asked for all along, we're returning it to New York for those reasons. You would have no challenge to that. Well, Your Honor, I would say this, is that the two events are inductively twined. I suppose Your Honor could say that, yes, the FAA has the discretion to reassign the application to the New York ACO in a vacuum, but we're not in a vacuum. What happened in this case happened in this case. The folks at the Wichita ACO said some things that were demonstrably false. We know they're demonstrably false because the FAA conceded after the fact that they were demonstrably false. The things that the FAA said in those memorandums were very harmful to my client, both reputationally and otherwise. I understand that, I do understand. I hear your point on that, and you've articulated it quite well, but when we review agency actions, if we were to find reasoning provided to be arbitrary and capricious, all we do is we send it back for the agency to take another stab at providing reasoned rationale for the transfer. And so there's nothing we would do, and I'm sure you're not asking us to do anything that would prevent them from sending it right back to New York, for example, for the reasons I articulated. And indeed, if they have good reason, that may not be a substantive challenge, but that's for another day, Your Honor. Today, we're here about what actually happened in this case, and what happened in this case was my client was slandered and maligned, and indeed, he was shot off to New York for no good reason. Did you raise that reputational harm in your opening brief? Yes. Where in your opening brief is it? Standby. Chief Shultz, what evidence is there in the record that there is anyone else in Omaha that could handle this? Forgive me, Your Honor, I think you mean Wichita. I'm sorry, Wichita. We're not sure of that, but certainly the FAA has significant resource to assign personnel from other branches, and bear in mind, too, Your Honor, under FAA guidance, they can certainly assign somebody from another branch, for example, a structural specialist from the New York ACO to Wichita, rather than moving the entire project out to New York. And you want us to tell them to do that? I want you to send the case back to Wichita so they have the opportunity to consider doing that. I don't believe it's within the court's purview to order the FAA to assign anybody to a particular project. Right. You mentioned earlier costs that were associated with the transfer to New York. Did you submit any affidavit or declaration documenting those costs? Other than the emails of Mr. Kiser himself, no, Your Honor. And those said what costs specifically? Well, the simple movement of personnel back and forth between Wichita and New York. Well, that's not happening in the COVID era, I shouldn't think. Well, it's gonna have to happen, Your Honor, because FAA guidance specifically calls for face-to-face meetings during the SEC certification process. But have those been happening? No. I assume there's been an adjustment to that process for the pandemic. To some degree, yes, but with respect to what's happening in New York, they've already gone up to three program managers and the project is effectively stalled there. And that's part of the- Okay, but can you tell me what, so you have no declaration that shows any actual costs incurred as a result of this transfer, to this point. I understand your point that it could happen in the future, but nothing at this point. There's no declarations per se, but again, the FAA, even in its own brief, refers to these emails and adopts them as part of its argument as well. Okay. And then at this point, you say it's largely stalled, but I'm assuming that meetings have remained virtual and not in-person? To the best of my knowledge, yes, ma'am. Have they given you any indication that in the foreseeable future, they're going to return to in-person meetings? Not that I'm aware of, Your Honor. Are you aware of them requiring in-person meetings when, for example, the head of the company is unable to travel? Or do they do accommodations under the Americans with Disabilities Act? I'm not aware- Rehabilitation Act. I'm not aware of that, Your Honor. All I can tell you is, and again, this is cited in our brief, that the FAA's own guidance requires face-to-face meetings for certain portions of the STC process. To suggest that face-to-face meetings can never happen or won't happen is inconsistent with their own guidance. Can I just ask you one question, and then we'll give you a little bit of time for rebuttal. The issue of finality, we haven't talked about that yet this morning, but I just want to clarify a couple of things. First, you don't take issue with the notion that the normal APA finality principles apply here. I know you think it's final, the order that you want resented as final, but you don't take issue with either the applicability of those normal APA principles of finality or the notion that finality is an issue that we can properly address at this stage and as to which you would have to prevail. I believe it's incumbent upon the court to address that issue. I believe the order is final for several reasons, not the least of which is because the FAA said it was, but more importantly, there is no other avenue to address this issue. There is no other procedure. There's no venue that my client can go to to have this issue aired. There's nothing beyond this. Now, the administrator says in its brief that the certification process is not yet over, but even when it's over, the end result of that, either there's an STC issue or not, but it does not deal with things that occur within the process itself. Especially- That's going to be often, I'll just ask one last question and then we'll give the government a chance. That's going to be true a lot of times when you have interlocutory orders. There's going to be things in an interlocutory order that are necessarily non-final. There may not be any opportunity to address the issue in an interlocutory order, even if it's wrong. But if it's non-final, there's nothing anybody can do about it, especially if the party that would complain about it ends up prevailing at the end of the day anyway. That's just part of the deal. Yeah, again, Your Honor, I would respectfully disagree to the extent that this is an interlocutory order. It's not. It has profound legal consequences for my client. Okay, understood. Thank you. Unless my colleagues have any further questions for you, Mr. Schulte, at this point, maybe we'll hear from the government. Thank you. We'll give you a bit of time for rebuttal. Yes, sir. Thank you, Your Honor. May it please the court, McKee Newmeister on behalf of the government. As our brief explains, there are three independent threshold grounds for dismissing this petition for review, and I'm happy to answer any questions that the court may have. Well, I guess the question is, in your view, which is logically first for the court to address? Well, Your Honor, I think that the court has the ability to address any of the three threshold grounds. I agree. Which is the most logical for us to begin with. I think because the court can address any, I think it doesn't necessarily have to start in any one place. I think that the court could start with standing, or the court- Would that not be the usual place to start? It is the usual place, Your Honor, to establish courtship. Somebody don't do that. Suppose, I mean, standing will make absolutely no law, right? That's correct, Your Honor, and- If we say that a certain type of order is not final, or is committed by law to agency discretion, it seems to me we are resolving a legal issue. I disagree that the court has to make law to conclude that this case does not involve a final order, Your Honor. I think it's squarely within the court's precedence, particularly the American Train Dispatchers, the ICC case, which said that where there's a procedural ruling that just directs a party to proceed before an agency in one way rather than another, that that is not a final order. Well, remind me, was there a standing issue in that case? I don't believe the court addressed standing in that case, Your Honor. Right, but in any event, said it was not a final order. Said it was not a final order. And because these are threshold issues, the court's already recognized finality in this context is at least a threshold issue that the court can resolve before it addresses jurisdiction. That's more clearly finality and possibly committed to agency discretion. I mean, I think they probably qualify as non-merits threshold determinations. Yes, Your Honor. And the court- To make more law or less law on these threshold issues. That's true, Your Honor. And I'll just point out the court in the Flight Now case already characterized finality in the context of an FAA order as something that is at least a non-merits, non-jurisdictional issue. And so because of that, it's clear that the court can reach finality first here. And we think it's squarely within the court's precedence to say that this is a procedural ruling, an interim ruling in the course of an ongoing adjudication that doesn't determine any rights or obligations or legal consequences, and therefore that this is a non-final order. Well, in fact, we specifically so held in Enright-Aiken County that finality can be decided before jurisdictional questions. Whether an agency decision is subject to judicial review is a paradigmatic threshold question, correct? So our circuit precedent answers this question. Flight Now wasn't actually a holding, but Aiken was. And so that is our precedent. Thank you, Your Honor. Yes, I think it's clear that this is the kind of issue that can be addressed before the court addresses the issue of standing, and that that would provide a clear ground for this court to dismiss the petition for review. Can you clarify for me what the FAA is doing under pandemic conditions?  or have they suspended their rules about in-person meetings? My understanding, Your Honor, is that the FAA is not holding in-person meetings because of the pandemic, that meetings are being conducted remotely because of the pandemic. And is there any end date to that plan at this point? I'm not aware of any end date and what the status of that plan is. Okay. Do you have a view on their claim of reputational injury? Okay, they didn't. As I read it, and I may have missed it, and I'm sure he'll correct me about that, but I didn't see it in the opening brief. I saw it clearly in the reply brief, which you obviously didn't have a chance to address. So would you like to address now the claims of their reputational injury and why that, why in your view that does or does not establish standing? Yes, Your Honor. We agree that this argument doesn't appear in the opening brief and it has less been forfeited, but addressing it on the merits, for the reason that that came up, I believe in opposing counsel's colloquy with Judge Ginsburg, to the extent that they're claiming reputational injury akin to a defamation injury, that's simply not something they can claim without showing that there has been publication, that this information has been shared with other individuals. And that's- Well, I'm not so sure about that. If someone claims reputational injury, their livelihood depends upon operation within a massive federal agency. And someone starts circulating in written form, memo form, hypothetically here, very scurrilous, damaging, and shall we say, again, this is hypothetical, something that was sort of libelous per se, and circulates it around so that no one will ever want to do business with them again. I'm not sure that that would count as sufficient publication. It's quite different from transunion, because transunion wasn't making substantive decisions, from the Supreme Court, transunion wasn't making substantive decisions. This is communication of information in their theory, that in their theory is libelous, slanderous, cause reputational harm within the very entity on which their livelihood depends. So I don't know that publication is your best place. Tell me I'm wrong. I'm not sure if that's a sword you want to fall on. I think that, you know, it's a little unclear from the reply brief, but I think you could read them to be alleging two kinds of reputational harm. One is harm to their standing in the industry, which I think would require publication in order to show that under transunion, and also this court's decision and owner operator supports that as well. To the extent they're claiming harm to their reputation purely within the FAA, I think your honor has a point that it feels a little bit different than what's going on in those cases, but still in order to demonstrate standing, they have to show a concrete harm based on the statements that they're challenging. And they simply haven't pointed to any evidence in the record demonstrating that there is a harm  and that they can show that they're going to suffer a direct, concrete, palpable harm as a result of these statements appearing in this letter. But ultimately- Is this memo subject to FOIA? I'm not certain, your honor, whether or not this particular information would- It's not public records? I think as a public record in this file, it would be subject to FOIA whether or not there's any kind of exception that applies, I'm not certain. I don't know off the top of my head, your honor, but ultimately, this all goes to standing and sort of the court really doesn't have to address these questions at all because it's very clear that this is not a final order because it's simply an interim procedural rule. Can I just ask one question about the assertion of reputational injury in the opening brief? So on page 25 in the paragraph that's addressed to standing, there's a sentence that says, with Wingler Technology has substantial interest in the FAA's- This is the opening brief, sorry. Wingler Technology has a substantial interest in the FAA's final order, given that it denies a request to rescind baseless and defamatory allegations concerning the health and safety of FAA employees. That doesn't specifically talk about a reputational injury or refer to Mr. Kaiser in particular, but what else would it be referring to? What do you think when you read that statement? Your honor, I take that statement to sort of be consistent with some things that they said in the record, that they don't like some of the statements that were made in the June 25th letter, that they're not happy with some of the reasons that the FAA gave for undertaking the transfer, but simply calling statements defamatory isn't sufficient to carry their burden of demonstrating a substantial probability of harm for purposes of article three. I think you may well be right that there's a problem in terms of the evidentiary substantiation and proof. I'm just talking about the airing of the theory to begin with. If someone says I've been defamed, it just, I don't know how to construe that other than to say that I'm worried about the harm to my reputation, but maybe I'm wrong about that. Maybe there's something else that's connoted by the statement that there was baseless and defamatory allegations. Maybe they're baseless and defamatory in some other way, but I guess I'm just wondering, does the government have a way to construe that language that doesn't at least flag the prospect of reputational injury, independently of whether that was sufficiently substantiated but in terms of just airing the theory, or is there some other way to read that? I can't think of anything, Your Honor, but I think just to say that something is defamatory, I see my time is up. Sorry if I- Yeah, yeah, of course. Yeah, please, please. Just to sort of use the term colloquially to describe a statement as defamatory isn't the same as claiming that you have sustained a concrete harm for purposes of Article III standing based on the statement. To call something defamatory or slanderous or baseless is a way to characterize an action that you don't like, but it doesn't demonstrate that you're saying that you have actually been defamed in a legal sense for purposes of tort law. It doesn't demonstrate that you're saying that you have sustained an Article III injury, which is not defamation. The Article III injury here is something else like reputational harm or financial harm as a result of statements. And so I think it's simply not clear that that characterization of statements in a letter is enough to bring in the entire panoply of arguments about why something satisfies Article III. Would you agree it's an assertion, it's not an argument? Yes, Your Honor. Ordinarily, we don't treat assertions without an argument as though they were really argued. Correct, Your Honor. It's a bare assertion that doesn't contain any argument to demonstrate why it's assertion about certain facts is in fact correct and sufficient under the court's legal standards. But ultimately, the court doesn't need to reach any of these questions about standing because it can resolve this case on finality grounds. I apologize, can I just ask one more quick question on the 2020 Aircraft Certification Safety Act, which orders sort of a new procedure for dealing with disputes about the certification process. Is that dispute resolution process set up yet with an FAA? Do you think it doesn't apply to pending proceedings, it's only prospective? It's not clear from the statute to me. And so I wasn't clear why that was just mentioned in the past on bias. I just wanna make sure. You don't have a process in place for it right now? That's correct, Your Honor. The FAA is working on setting up the process in response to the act. It hasn't yet established the new process. And so I don't wanna get out ahead of the agency with respect to how it understands the process is going to work and how it's going to apply. Because- Is there a reason you don't take any, it does not apply to this case in the FAA's view? I'm not certain going forward with the position we would take on that, Your Honor. It's certainly not- Maybe narrow-minded and say this appeal, this case? It's certainly not in effect yet, Your Honor. And so it doesn't, it is not, there's no order in setting up this process does not currently apply. Okay, thank you. Hey, unless my colleagues have further questions for you, we'll go to Mr. Schulte for rebuttal. Thank you, Ms. Neumeister. Thank you, Your Honor. Mr. Schulte, I believe you wanted to reserve a minute and a half for rebuttal. We'll give you that time. A whopping one minute, 30 seconds. Thank you, Your Honor. Your Honor, the petitioner well understands the court's concerns about standing and certainly those concerns are well taken. But the FAA does not seriously dispute the underlying bravamen of my client's case. Context is important here. The FAA's congressional mandate is to promote air safety and commerce. My client and his company has spent 40 years in that business. That's all they know. So when the FAA and its employees say that he is a threat to FAA employees, a physical threat, no less, and a threat to air safety, that is the scarlet letter of our industry. If you are unsafe, nobody wants anything to do with you. So to suggest, geez, we don't know what the harm is here is patently absurd in the context in which this is occurring. The harm is profound. And so we will only submit that there is no other remedy to deal with this situation. There is no other way for Mr. Kaiser to prove, not only to the folks at the FAA, but the people that do business with the FAA, that he's not a threat to air safety, that he's not a threat to employees. And to counsel's earlier comment, this gee whiz, there's no identifiable harm vis-a-vis traditional court law, I respectfully disagree. Threatening an employee in the performance of their official function is a federal crime. Mr. Kaiser has been effectively accused of committing a federal crime, and that is libelous per se under any measure of the law. So the harm is very real. So to suggest he has no Article III standing, I respectfully disagree with counsel. But unless the court has any questions- This memo, yeah, I have one comment. The memo, and I can't, I'm afraid I can't say the person's name, they wrote the memo, the memo to which you object. Yes, Scorantino, Your Honor. Scorantino? Scorantino. Okay, that's my ignorance, I apologize. Was that included in the file of materials that were shared with the folks in the New York office? It's part of the STC file. I can't imagine that it would not be. And to Your Honor's point, that would be in the STC file, and it would be subject to FOIA. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Ginsburg